Dean G. Rallis Jr. (# 94266)
    drallis@afrct.com
Matthew D. Pham (# 287704)
    mpham@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
    CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for WELLS FARGO BANK, N.A.,
successor by merger with Wells Fargo Bank
Southwest, N.A., f/k/a Wachovia Mortgage,
FSB, f/k/a World Savings Bank, FSB

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>MAURA ANN WHITE,<br><br>    Debtor. | Case No.: 4:10-bk-72706 CN<br><br>Chapter 13<br><br>**WELLS FARGO'S MOTION FOR RELIEF REGARDING THE PLAN AND THE DISCHARGE INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 23, 2016<br>Time:   11:00 a.m.<br>Crtrm:  215<br>          1300 Clay Street<br>          Oakland, California 94612 |

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES TRUSTEE; THE CHAPTER 13 TRUSTEE; THE DEBTOR AND HER COUNSEL OF RECORD; AND PARTIES REQUESTING SPECIAL NOTICE:**

Wells Fargo Bank, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo"), secured creditor of Maura Ann White, the chapter 13 debtor in the above-captioned case (the "Debtor"), hereby moves for relief that Wells Fargo's enforcement of its remedies under applicable

nonbankruptcy law against its collateral, the Debtor's home, does not violate the Debtor's confirmed plan or the discharge injunction (the "Motion"). Wells Fargo's Motion is supported by the concurrently filed Declaration of Elizabeth Ann Nickel (the "Nickel Declaration") and Request for Judicial Notice (the "RJN"). Specifically, by this Motion, Wells Fargo respectfully requests that the Court enter an Order:

1. Granting the Motion;

2. Finding that the Debtor is in breach of the Plan for failing to surrender the Property to Wells Fargo;

3. Authorizing Wells Fargo to enforce its remedies under applicable nonbankruptcy law against the Property as a result of the Debtor's breach;

4. Finding that Wells Fargo's enforcement of its remedies under applicable nonbankruptcy law against the Property does not violate the provisions of the Plan; and

5. Finding that Wells Fargo's enforcement of its remedies under applicable nonbankruptcy law against the Property does not violate the discharge injunction under 11 U.S.C. § 524(a)(2); and

6. Providing for such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: August 22, 2016    ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By:  /s/ Dean G. Rallis Jr.
     Dean G. Rallis Jr.

Attorneys for WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB

# MEMORANDUM OF POINTS AND AUTHORITIES

1. FACTUAL BACKGROUND.

On or about July 25, 2003, the Debtor executed a promissory note in the principal amount of $397,000 to World Savings Bank, FSB (the "Note"). See Nickel Decl. ¶ 4. On the same day, the Debtor delivered a deed of trust (the "Deed of Trust") granting World Savings Bank, FSB, a security interest in certain real property located at 22912 Princeton Place, Castro Valley, California 94552 (the "Property").[1] Id. Effective December 31, 2007, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, and effective November 1, 2009, Wachovia Mortgage, FSB, merged into Wells Fargo Bank, N.A., through an intermediary entity named Wells Fargo Bank Southwest, N.A., that same day. See RJN Exs. 1–3. Through this name change and subsequent merger, Wells Fargo is the current holder of the Note and Deed of Trust. Nickel Decl. ¶ 5.

The Debtor missed making the monthly payments under the loan, id. ¶ 6, which led to the recordation of a notice of default on April 26, 2010, see RJN Ex. 4, and then to the scheduling of a trustee's sale for November 8, 2010, see RJN Ex. 5. Before the trustee's sale could take place, the Debtor filed her voluntary petition under chapter 13 of the Bankruptcy Code on November 2, 2010. See Voluntary Petition, ECF No. 1. Wells Fargo then filed a proof of claim, asserting a secured claim in the amount of $500,532.00 and prepetition arrears in the amount of $55,562.07.[2] See Proof of Claim No. 3-1.

The Debtor eventually filed her second amended chapter 13 plan on April 21, 2011 (the "Plan"). See Ch. 13 Plan, ECF No. 27. Regarding the treatment of Wells Fargo's claim, the Plan provides, in relevant part, the following:

> 4. The debtor(s) will pay directly the following fully secured creditors and lessors:
>
> | Name | Monthly Payment |
> |---|---|
> | **Wachovia** | **2,400.00** |

---

[1] According to the Debtor, the Property is her home. See Schedule A, ECF No. 11.

[2] Wells Fargo subsequently filed an amended proof of claim on November 13, 2013, asserting a secured claim in the amount of $496,538.31 and prepetition arrears in the amount of $55,433.51. See Proof of Claim No. 3-2.

. . .

6. The debtor(s) elect to have property of the estate revest in the debtor(s) upon plan confirmation. Once the property revests, the debtor(s) may sell or refinance real or personal property without further order of the court, upon approval of the Chapter 13 Trustee.

7. The debtor(s) further propose pursuant to 11 USC § 1322(b):

. . .

Debtor is seeking loan modification from Wachovia/Wells Fargo on 1st deed of trust. Debtor will make estimated HAMP payment until modification approved or denied. No arrearage claim to be paid through plan. If debtor is granted a loan modification, arrears will be dealt with through modification. If debtor is denied modification, or 6 months elapses [sic] from date of filing with no modification, property will be surrendered.

Id. at ¶¶ 4, 6, 7. The Court subsequently confirmed the Plan on May 10, 2011. See Confirmation Order After Ct. Hr'g, ECF No. 33.

Consistent with what paragraph 7 of the Plan proposed, though the Debtor made certain payments to Wells Fargo subsequent to the confirmation of the Plan, the Debtor never made and Wells Fargo never received any payments on account of the prepetition arrears of approximately $55,000.00. See Nickel Decl. ¶ 10. As to the postpetition ongoing monthly payments, despite the Plan providing that such payments were $2,400, the Debtor was sending monthly payments of only $1,570 to Wells Fargo. Id. ¶ 11. This occurred from February 2011 through June 2016. Id. This was apparently the Debtor's unilateral attempt to modify her loan without obtaining Wells Fargo's consent and without obtaining approval of a loan modification. Id. A copy of Wells Fargo's loan payment history for the Debtor's loan from August 6, 2003, through July 15, 2016, is attached to the Nickel Declaration as **Exhibit A**.

Following confirmation, the Debtor did try to obtain a loan modification though. The Debtor submitted a completed Making Home Affordable Program Request for Modification and Affidavit (RMA) (the "Application") dated April 19, 2011, to Wells Fargo in connection with the loan secured by the Property. See id. ¶ 12. A copy of the Application is attached to the Nickel Declaration as **Exhibit B**. Wells Fargo denied the Application, which denial was confirmed in writing to the Debtor (the "Denial Letter") on or about July 14, 2011. See id. A copy of the Denial Letter is attached to the Nickel Declaration as **Exhibit C**. To date, no other loan

modification application has been submitted to or otherwise approved by Wells Fargo. Id. Thus, the Debtor should have been making monthly payments in the amount as set forth in the Note the entire time. Id.

On September 19, 2012, the Debtor filed a complaint against Wells Fargo in the state court, which prayed for, among other things, a declaratory relief that her loan has been modified to permanently reduce her monthly payments to $1,570. See RJN Ex. 6. This theme continued with her subsequent complaints, with her first amended complaint alleging that the Plan constituted an enforceable contract to permanently reduce her monthly payments, see RJN Ex. 7, and her second amended complaint alleging that her making of the reduced payments during the trial period required Wells Fargo to permanently modify the loan, see RJN Ex. 8. On October 18, 2013, the trial court sustained Wells Fargo's demurrer to the second amended complaint without granting the Debtor leave to amend and dismissed the action. See RJN Ex. 9.

That, however, did not end the Debtor's litigation against Wells Fargo. The Debtor then appealed the trial court's order to the court of appeal. See RJN Ex. 10. In her opening brief, she argued that Wells Fargo was obligated under the Home Affordable Mortgage Program ("HAMP") to permanently modify the Debtor's loan. See RJN Ex. 11. Yet in her reply brief, she abandoned that theory and instead argued that the Plan, rather than HAMP, obligated the Wells Fargo to permanently modify the loan. See RJN Ex. 12. In the end, although it considered only the arguments in the reply brief, the court of appeal nevertheless affirmed the trial court's order sustaining the demurrer on July 2, 2015. See RJN Ex. 13. Despite the Debtor losing her appeal (and failing to otherwise obtain any kind of loan modification from Wells Fargo), she has not surrendered the Property to Wells Fargo as required by the Plan.

Back in the Debtor's bankruptcy case, on February 19, 2016, the chapter 13 trustee filed a notice indicating that the Debtor has completed her plan payments under the Plan and is entitled to a discharge. See Not. of Plan Completion & Req. for Discharge by Trustee, ECF No. 60. The Court then granted the Debtor her chapter 13 discharge that same day. See Order of Discharge, ECF No. 61. Despite the Debtor obtaining her discharge, as of the filing of this Motion, her bankruptcy case has not been closed.

## 2. ARGUMENT.

Given that the Debtor has done nothing to cure the prepetition arrears owed to Wells Fargo either through the full remittance of over $50,000 to Wells Fargo or through an approved loan modification or to otherwise unequivocally surrender the Property, Wells Fargo now seeks to enforce its remedies under applicable nonbankruptcy law, including, without limitation, to foreclose upon and obtain possession of the Property. But given the Debtor's proclivity towards litigating against Wells Fargo and her unjustified belief that the Plan has somehow unilaterally provided her with a loan modification, the Debtor may move for contempt sanctions against Wells Fargo for taking any steps towards foreclosing upon the Property, alleging that such actions violate the Plan or her discharge. Erring on the side of caution and desiring to prevent further unnecessary litigation, Wells Fargo requests relief from this Court that Wells Fargo is permitted to enforce its remedies under applicable nonbankruptcy law against the Property in light of the Debtor's breach of the Plan and that such enforcement is not in violation of any applicable provision of the Plan or of the Bankruptcy Code.

### 2.1. **Wells Fargo's Intended Actions Will Not Violate Any Provisions of the Plan**.

Pursuant to the Plan, upon confirmation, the Property revested in the Debtor. See Ch. 13 Plan ¶ 6; see also 11 U.S.C. § 1327(b). Once that occurred, the automatic stay no longer stayed any acts against the Property under § 362(a) as the Property was no longer property of the estate. See 11 U.S.C. § 362(c)(1); see also Cal. Franchise Tax Bd. v. Kendall (In re Jones), 657 F.3d 921, 927–29 (9th Cir. 2011) (stating that estate property vested in the debtor at confirmation would not be subject to the automatic stay).

Nevertheless, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "Another way of looking at the binding effect of confirmation is that the plan is a contract between the debtor and the debtor's creditors." Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 435 (B.A.P. 9th Cir. 1997). Thus, the Court must first look to the provisions of the Plan to determine whether Wells Fargo's intended actions against the Property are permissible.

1   Although the Plan does not affirmatively prohibit Wells Fargo from pursuing its remedies against its collateral, the Plan does seem to do so implicitly by allowing the Debtor to a chance to obtain a loan modification and by limiting the surrender of the Property only upon the earlier of the denial of the Debtor's proposed loan modification or the lapse of six months without a modification.[3] Despite the Debtor's inability to obtain approval of a loan modification, the Debtor's failure to obtain a modification through her state court litigation, and the passing of the entire 60-month duration of the Plan, the Debtor has still not surrendered the Property to Wells Fargo. It follows that the Debtor is in breach of the Plan and Wells Fargo is permitted to exercise its rights against the collateral as a result of that breach. The Debtor cannot point to any provision in the Plan that would otherwise preclude Wells Fargo from doing so.

Wells Fargo therefore requests relief from this Court that the Debtor is in breach of the Plan, that Wells Fargo is entitled to enforce its remedies under applicable nonbankruptcy law against the Property as a result of that breach, and that such enforcement does not violate any provision of the Plan.

2.2.    **Wells Fargo's Intended Actions Will Not Violate the Discharge Injunction**.

After a chapter 13 debtor completes all of his or her payments under a plan, the bankruptcy court enters a discharge under § 1328 that discharges all debts provided for by the plan with certain exceptions. See 11 U.S.C. § 1328(a). A discharge, once granted, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such <u>debt [discharged under § 1328] as a personal liability of the debtor</u>, whether or not discharge of such debt is waived." Id. § 524(a)(2) (emphasis added).

Wells Fargo's proposed course of action though does not violate the discharge injunction because Wells Fargo is only seeking to recover its unpaid debt against its collateral, <u>not</u> the Debtor personally. Wells Fargo has <u>no</u> intention of pursuing the Debtor personally for the

---

[3] Specifically, the Plan provides that six months have elapsed "from date of filing with no modification." Although it is unclear what the "date of filing" refers to, it is clear that six months have elapsed since any potentially applicable filing, be it the Plan (filed April 21, 2011) or the confirmation order (entered May 10, 2011).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

outstanding amount of the debt. Not only would that be a violation of the discharge injunction, but such action may constitute a waiver of Wells Fargo's right to foreclose upon the collateral. See Cal. Civ. Proc. Code § 726(a); Sec. Pac. Nat'l Bank v. Wozab, 51 Cal. 3d 991, 1001–02 (1990). Even if Wells Fargo follows through with the foreclosure sale and a deficiency results, Wells Fargo is precluded by the discharge injunction and applicable nonbankruptcy law from obtaining a deficiency judgment against the Debtor personally. See Cal. Civ. Proc. Code § 580d. In other words, there is no possibility that Wells Fargo will violate the discharge injunction by taking its intended actions. The Debtor cannot argue that the discharge injunction precludes Wells Fargo from foreclosing on its collateral.

Wells Fargo therefore requests relief from this Court that Wells Fargo's enforcement of its remedies under applicable nonbankruptcy law, including, without limitation, foreclosing upon and obtaining possession of the Property, does not violate the discharge injunction under § 524(a)(2) of the Bankruptcy Code.[4]

3. CONCLUSION.

**WHEREFORE**, Wells Fargo respectfully requests that this Court enter an Order:

1. Granting the Motion;

2. Finding that the Debtor is in breach of the Plan for failing to surrender the Property to Wells Fargo;

3. Authorizing Wells Fargo to enforce its remedies under applicable nonbankruptcy law against the Property as a result of the Debtor's breach;

4. Finding that Wells Fargo's enforcement of its remedies under applicable nonbankruptcy law against the Property does not violate the provisions of the Plan; and

5. Finding that Wells Fargo's enforcement of its remedies under applicable nonbankruptcy law against the Property does not violate the discharge injunction under 11 U.S.C. § 524(a)(2); and

---

[4] Again, Wells Fargo does not, by this Motion, seek relief to pursue an action against the Debtor personally on her obligations under the Note and Deed of Trust. Wells Fargo does seek relief to proceed to enforce its rights under the Note and Deed of Trust against its collateral, including foreclosing and securing possession of the real property collateral.

6. Providing for such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: August 22, 2016

ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL & TRYTTEN LLP

By: /s/ Dean G. Rallis Jr.
     Dean G. Rallis Jr.

Attorneys for WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB